UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
JUUL LABS, INC.,                                           :
                                                          :
                               Plaintiff,                 :
                                                          :        **REPORT AND RECOMMENDATION**
                        -against-                          :
                                                          :          21 Civ. 2615 (MKB) (VMS)
                                                          :
EZ DELI GROCERY CORP I,                                   :
                                                          :
                               Defendant.                 :
                                                          :
------------------------------------------------------------- x

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Juul Labs, Inc. ("Plaintiff") brings this action against Defendant EZ Deli

Grocery Corp I ("Defendant") alleging trademark infringement pursuant to Section 32(1) of the

Lanham Act, 15 U.S.C. § 1114(1); false designation of origin and unfair competition under

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and supplemental claims under New

York law.  See ECF No. 1.  Before the Court is Plaintiff's default judgment motion, referred for

report and recommendation by the Honorable Margo K. Brodie.  See ECF No. 11.  For the

reasons that follow, this Court respectfully recommends that Plaintiff's motion be granted in part

and denied in part.

## I.    BACKGROUND

### a.  Factual Summary

The following facts are derived from Plaintiff's complaint, and documents incorporated

by reference therein.  See Complaint ("Compl."), ECF No. 1.

Plaintiff is the designer, manufacturer and distributor of JUUL-branded electronic

nicotine delivery systems ("ENDS") and other related products (collectively, "the JUUL

Products").  Id. ¶ 2.  Plaintiff designs, manufactures, distributes, markets and sells JUUL

Products, including the JUUL system comprised of: (i) a device containing a rechargeable battery, control circuitry and a receptacle for a cartridge or pod; (ii) a disposable cartridge or pod ("JUULpod") that can be inserted into the device, has a heating chamber and is prefilled with a proprietary nicotine e-liquid formulation; and (iii) a charger for charging the device, and related accessories. Id. ¶ 13.

Plaintiff is the exclusive owner of the following United States Trademark Registrations: "JUUL," Registration Number 4,818,664; "JUUL" (in stylized characters), Registration No. 4,898,257; and "JUULpods," Registration Number 5,918,490 (collectively, "the JUUL Marks"). See id. ¶ 11 & Ex. A. The JUUL Marks appear clearly on JUUL Products, as well as the packaging and marketing materials related to such products. Id. ¶ 14. Plaintiff markets JUUL Products internationally as well as nationwide to current adult smokers, including through its website, and sells its products through its nationwide authorized network. See id. ¶ 18. Plaintiff has built up and developed significant customer goodwill in its entire product line, and the JUUL Products are immediately identified by the JUUL Marks. See id. The JUUL brand is well-known to consumers, and Plaintiff has spent substantial time, money and effort in developing consumer recognition and awareness of its brand. See id. ¶¶ 17-18. The JUUL Marks, as well as the goodwill arising from such trademarks, have never been abandoned by Plaintiff, and Plaintiff continues to preserve and maintain its rights with respect to the JUUL Marks. See id. ¶¶ 15-16.

Beginning on a date unknown to Plaintiff, Defendant, without the consent of Plaintiff, has offered to sell and sold, and/or facilitated the offer and sale of, goods that were neither made by Plaintiff nor by a manufacturer authorized by Plaintiff, all by using reproductions, counterfeits, copies and/or colorable imitations of JUUL Products and the JUUL Marks ("Counterfeit Goods"). Id. ¶ 19. The Counterfeit Goods sold by Defendant bear counterfeit and confusingly

similar imitations of the JUUL Marks in a manner likely to be confused with genuine JUUL Products.  Id. ¶ 21.  On October 18, 2019, a representative of Plaintiff purchased what Plaintiff confirmed to be a counterfeit product at a retail business owned and operated by Defendant.  See id. ¶ 22 & Ex. B.

On January 27, 2020, Plaintiff's counsel mailed a cease-and-desist correspondence to Defendant.  See id. ¶ 23 & Ex. C.  This correspondence provided specific notice of the following, among other items: that Plaintiff confirmed goods sold by Defendant are counterfeit; Plaintiff demanded Defendant cease the sale, manufacture, marketing and importation of Counterfeit Goods and all other unauthorized uses of Plaintiff's intellectual property; and Plaintiff's ownership of the JUUL Marks.  See id. ¶ 23.  The correspondence also requested that Defendant's counsel contact Plaintiff's counsel to discuss resolution of these issues without litigation, but Defendant never contacted Plaintiff's counsel.  See id. ¶ 24.

Beginning on a date unknown to Plaintiff, Defendant, without the consent of Plaintiff and within the United States, has offered to sell and sold non-genuine JUUL Products which, as stated on the packaging of the products themselves, are only authorized for sale in particular countries outside the United States and materially differ from genuine JUUL Products ("Unlawful Grey Market Goods").  See id. ¶ 25.  Because the Unlawful Grey Market Goods are labeled and packaged to comply with the regulations of the authorized foreign marketplaces, the labeling and packaging of the Unlawful Grey Market Goods are not in compliance with the regulations of the U.S. Food and Drug Administration ("FDA").  See id.  On March 13, 2020, a representative of Plaintiff purchased what Plaintiff confirmed to be an Unlawful Grey Market Goods product at a retail business owned and operated by Defendant.  See id. ¶ 26 & Ex. D.

Defendant is not authorized and never has been authorized by Plaintiff to produce,

manufacture, distribute, market, offer for sale and/or sell ENDS or other types of products or merchandise bearing the JUUL Marks, or any variations thereof.  See id. ¶¶ 20, 27.  The Counterfeit Goods sold by Defendant are therefore not manufactured in accordance with Plaintiff's own stringent quality controls but are instead manufactured outside of Plaintiff's knowledge and control, using unknown substances and materials, in unknown locations and with unknown manufacturing requirements/controls.  See id. ¶ 20.  Plaintiff has no control over the nature, quality or pricing of Defendant's products or marketing, or any other aspect of the business conduct of Defendant.  See id. ¶ 27.

Defendant uses words, symbols, images, designs and names confusingly similar or identical to the JUUL Marks so as to confuse consumers and aid in the promotion and sales of the Counterfeit Goods.  See id. ¶ 28.  Defendant acted intentionally and/or willfully in infringing upon the JUUL Marks through sale and distribution of the Counterfeit Goods, knowing that the JUUL Marks belonged to Plaintiff, that the Counterfeit Goods were in fact infringing, and that Defendant was not authorized to infringe upon the JUUL Marks through sale and distribution of the Counterfeit Goods.  See id. ¶ 39.  Defendant's counterfeit sales outlined above are likely to deceive, confuse and mislead purchasers and prospective purchasers into believing that the products are authorized by Plaintiff.  See id. ¶ 29.  Purchasers and prospective purchasers using or simply viewing Defendant's Counterfeit Goods and who perceive a defect, lack of quality, or any other irregularity are likely to mistakenly attribute the issue to Plaintiff, to the detriment of Plaintiff's business and the JUUL brand.  See id.  Defendant's actions to sell and distribute the Unlawful Grey Market Goods in the United States are intended to cause, have caused, and are likely to continue to cause public confusion or mistake, or to deceive consumers, the public, and the trade into believing that the Unlawful Grey Market Goods are genuine or

authorized JUUL Products.  See id. ¶ 59.  Defendant's unauthorized use of the JUUL Marks

began after Plaintiff legally established the existence and significant value of such trademarks,

including after Plaintiff's adoption and use of the JUUL Marks and after Plaintiff obtained two

of the trademark registrations described above.  See id. ¶ 31.  Defendant's infusion of the

Counterfeit Goods and the Unlawful Grey Market Goods into the marketplace reflects adversely

on Plaintiff, results in economic loss to Plaintiff including loss of sales of genuine JUUL

Products, damages the goodwill of the JUUL brand, and thwarts Plaintiff's honest efforts and

considerable expenditures to promote its genuine JUUL Products using the JUUL Marks.  See id.

¶¶ 32, 62.

### a. Procedural History

Plaintiff timely commenced this action by filing the Complaint.  See Compl.  Plaintiff

requested an entry of default for Defendant after Defendant failed to appear in this action.  See

ECF No. 9.  The Clerk of Court made an entry of default, and Plaintiff filed the instant motion

for default judgment, which the Honorable Margo K. Brodie referred for a report and

recommendation.  ECF Nos. 10-13.  In its motion for default judgment against Defendant,

Plaintiff seeks findings of liability for violations of (i) Trademark Infringement Under Section

32(1) of the Lanham Act, 15 U.S.C. § 1114(1) with respect to both the Counterfeit Goods and

the Unlawful Grey Market Goods; (ii) Unfair Competition Under Section 43(a) of the Lanham

Act, 15 U.S.C. § 1125(a) with respect to the Counterfeit Goods; (iii) False Designation of Origin

under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) with respect to the Counterfeit

Goods; (iv) Trademark Infringement Under New York Common Law; (v) New York Common

Law Unfair Competition; and (vi) Section 349 of New York General Business Law prohibiting

deceptive acts or practices.  See ECF No. 13 at 7-12.  Plaintiff also seeks statutory damages

pursuant to the Lanham Act, 15 U.S.C. § 1117; post-judgment interest pursuant to 28 U.S.C. § 1961(a); and injunctive relief pursuant to the Lanham Act, 15 U.S.C. § 1116.  See ECF No. 13 at 13-19.

On December 30, 2021, the Court scheduled a telephone conference to discuss whether Defendant had been properly served and requested a letter submission from Plaintiff regarding same.  See Order dated 12/30/2021.  Plaintiff filed a letter regarding the sufficiency of service on Defendant along with a declaration from the process server, Mr. Timothy Botti.  See ECF Nos. 15-16.  The Court held the aforementioned telephone conference on January 20, 2022, at which Defendant failed to appear despite the Court's mailing of its December 30, 2021 Order and Notice to Defendant.  See ECF No. 14; Minute Entry dated 1/20/2022; Order dated 1/20/2022.

## II. DISCUSSION

### a. Legal Standard

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step procedure by which a party may obtain a default judgment.  See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 186 (2d Cir. 2015) (citing Fed. R. Civ. P. 55); Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, if a party has failed to plead or otherwise defend against an action, the Clerk of Court must enter a certificate of default by making a notation on the record.  See Fed. R. Civ. P. 55(a).  Second, after this entry of default, if the defaulting party still fails to appear or move to set aside the default, the court may enter a default judgment if the complaint is well-pleaded. See Fed. R. Civ. P. 55(b).  The trial court has the "sound discretion" to grant or deny a motion for default judgment.  See Enron Oil, 10 F.3d at 95.  In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored,"

and doubts should be resolved in favor of the defaulting party.  Id. at 95-96 (recognizing "the responsibility of the trial court to maintain a balance between clearing its calendar and affording litigants a reasonable chance to be heard").  The Court must therefore ensure that (1) the plaintiff satisfied all required procedural steps in moving for default judgment, see Local Civ. R. 55.2; and (2) the plaintiff's allegations, when accepted as true, establish liability as a matter of law, see Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009).

**b.  Service Of Summons And Complaint**

Fed. R. Civ. P. 4(h)(1)(A) provides that service on a corporation may be effected pursuant to Fed. R. Civ. P. 4(e)(1), which in turn provides that service may be effected in accordance with the service rules of the state where the district is located.  New York State law allows for service upon a corporation by delivering the summons "to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service."  N.Y. C.P.L.R. § 311(a)(1).  The New York Court of Appeals has noted that this statute recognizes "any other agent authorized by appointment" and that a "corporation is free to choose its own agent for receipt of process without regard to title or position."  Fashion Page, Ltd. v. Zurich Ins. Co., 50 N.Y.2d 265, 272 (1980).  "In such a case the process server cannot be expected to know the corporation's internal practices.  Reliance may be based on the corporate employees to identify the proper person to accept service."  Id.; see id. at 273 (holding service upon person who lacked authority was reasonable where process server announced he was there to serve summons, receptionist referred him to a particular individual, and that person stated she had authority to accept process on behalf of corporation).  In short, a corporation regularly doing business in New York "generally cannot be heard to complain that the summons was delivered to the wrong person when the process server has gone to its offices,

made proper inquiry of the defendant's own employees, and delivered the summons according to their directions." Id. at 273.

Federal courts evaluating claims that service was ineffective[1] must weigh the circumstances of the particular case and the reasonableness of the process server's perception that a particular employee was authorized to accept service for a corporate defendant. See, e.g., Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc., 301 F.3d 54, 57-58 (2d Cir. 2002) (affirming district court's denial of motion to vacate default judgment where process server delivered summons to individual identified by corporate security as an officer authorized to accept service on behalf of corporation, and office manager's affidavit did not refute those facts, finding process server's reliance was reasonable); Nationwide Mut. Ins. Co. v. Kaufman, 896 F. Supp. 104, 105-06 (E.D.N.Y. 1995) (where process server with eighteen years-experience advised he was there to serve legal papers on defendants, and company comptroller accepted the papers, process server's belief that comptroller was either a managing agent or authorized to accept service was reasonable) (adopting report & recommendation).

Here, the process server served the summons and Complaint at Defendant's business address to Mr. Massim Kassim, a person who identified himself as Defendant's Manager. ECF No. 8; ECF No. 15 at 1-2; ECF No. 16 ¶ 4. Mr. Kassim also stated he was authorized to accept service of legal documents. ECF No. 8; ECF No. 15 at 3; ECF No. 16 ¶ 4. As such, service was reasonably effected in accordance with N.Y. C.P.L.R. § 311(a)(1), as it was reasonable to conclude Mr. Kassim was either a managing agent or authorized to accept service.

Service of the summons and Complaint upon Defendant was therefore proper. Plaintiff complied with the procedural requirements of moving for a default judgment by requesting and

---

[1] The Court notes Defendant has never objected to the method of service here.

obtaining entries of default for Defendant and applying for a default judgment.  See Local Civ. R. 55.2(a)-(b); ECF Nos. 9-13.  Plaintiff also complied with the requirement of mailing to Defendant all of the default judgment papers submitted to the Court.  See Local Civ. R. 55.2(c); ECF No. 15 at 3-4; ECF No. 15-1.  Thus, the Court turns to evaluating whether Plaintiff's allegations in the Complaint, when accepted as true, establish liability as a matter of law.

### c.  Liability

Entry of a default judgment constitutes admission of all well-pleaded allegations, except those pertaining to the amount of damages.  See Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).  "[C]onclusory allegations based on information and belief" will not suffice to support a finding of default-based liability.  J & J Sports Prods., Inc. v. Daley, No. 06 Civ. 238 (ERK) (JO), 2007 WL 7135707, at *3-4 (E.D.N.Y. Feb. 15, 2007), R&R adopted, 2007 U.S. Dist. LEXIS 49844 (E.D.N.Y. Mar. 20, 2007).  "However, allegations on information and belief may be sufficient to hold defendant individually liable on default judgment where they state facts primarily within the defendant's knowledge."  Sciascia v. Prime Protective Servs., Inc., No. 13 Civ. 800 (ADS) (AKT), 2014 WL 940721, at *5 (E.D.N.Y. Mar. 11, 2014) (collecting cases).

### i.  Counts I, II and IV: Federal Trademark Infringement And False Designation Of Origin With Respect To Counterfeit Goods, And Federal Trademark Infringement With Respect To Unlawful Grey Market Goods

Plaintiff seeks an entry of default judgment as to liability on (i) federal trademark infringement for the Counterfeit Goods; (ii) federal trademark infringement for the Unlawful Grey Market Goods[2]; and (iii) federal false designation of origin for the Counterfeit Goods.

---

[2] Grey market goods are "goods that are manufactured [under authorization from the trademark owner], are legally purchased [outside the United States] from authorized distributors, and are

Defendant is liable for trademark infringement if Plaintiff establishes that it "use[d] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a).  Defendant is liable for false designation of origin if Plaintiff establishes that it "use[d] in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."  Id. § 1125(a)(1).

Claims for false designation of origin and trademark infringement "are both governed by the same legal standard."  Am. Auto. Ass'n, Inc. v. Limage, No. 15 Civ. 7386 (NGG) (MDG), 2016 WL 4508337, at *2 (E.D.N.Y. Aug. 26, 2016) (citations omitted).  To state a claim for either cause of action, Plaintiff must establish "that it owns a valid trademark, that [Defendant] used the trademark in commerce, and that [Defendant's] use of that mark is likely to cause confusion regarding the source of the relevant product or services."  Whirlpool Props. v. Menpin

---

then imported by persons other than the trademark holder and without the markholder's permission."  Zino Davidoff SA v. CVS Corp., 571 F.3d 238, 241 (2d Cir. 2009) (quoting Olympus Corp. v. U.S., 792 F.2d 315, 317 (2d Cir. 1986)).  The Lanham Act imposes liability for Defendant's resale of the Unlawful Grey Market Goods because they are "goods that are not intended for domestic sale and are materially different from domestic goods" and are "goods sold in contravention of legitimate, established, substantial, and nonpretextual quality-control measures that the trademark holder follows, the sale of which will diminish the value of the mark."  Abbott Lab'ys v. Adelphia Supply USA, No. 15 Civ. 5826 (CBA) (LB), 2019 WL 5696148, at *4 (E.D.N.Y. Sept. 30, 2019) (citing Original Appalachian Artworks, Inc. v. Granada Elecs., Inc., 816 F.2d 68, 73 (2d Cir. 1987), Warner-Lambert Co. v. Northside Dev. Corp., 86 F.3d 3, 6 (2d Cir. 1996)).

Supply Corp., No. 19 Civ. 2722 (ENV) (JO), 2020 U.S. Dist. LEXIS 183459, at *7 (E.D.N.Y.

Sep. 30, 2020) (citing Mitchell Grp. USA LLC v. Udeh, No. 14 Civ. 5745 (DLI) (JO), 2017 WL

9487193, at *3 (E.D.N.Y. Mar. 8, 2017), R&R adopted, 2017 WL 3208532 (E.D.N.Y. July 28,

2017)) (further citations omitted).

Courts evaluate the likelihood of confusion by considering the following eight factors:

(1) strength of the plaintiff's mark; (2) the degree of similarity between the two marks; (3) the

proximity of the products in the marketplace; (4) the likelihood that the plaintiff will bridge the

gap between the products (enter a market related to that in which the defendant sells its product);

(5) evidence of actual confusion; (6) the defendant's bad faith; (7) quality of the defendant's

product; and (8) sophistication of the relevant consumer group.  See Polaroid Corp. v. Polarad

Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961).  No factor is dispositive; instead, courts consider

the totality of the circumstances.  See Limage, 2016 WL 4508337, at *3.

The Complaint's unrebutted factual allegations suffice to establish Plaintiff's trademark-

infringement and false-designation-of-origin Lanham Act claims.  First, Plaintiff alleged that its

various marks are registered with the USPTO.  See Compl. ¶ 11.  Second, Plaintiff has alleged

that Defendant made unauthorized uses of substantially similar marks in commerce.  See id. ¶¶

22, 24-26 & Exs. B, D.  Third, as discussed below, the likelihood-of-confusion factors weigh

heavily in Plaintiff's favor, compelling the conclusion that consumers are likely to be confused

by Defendant's use of counterfeit marks.

As to the first likelihood-of-confusion factor, the JUUL Marks are presumed to be strong

by virtue of being registered.  See Doctor's Assocs. LLC v. Hai, No. 19 Civ. 1968 (NGG)

(RER), 2019 WL 3330242, at *4 (E.D.N.Y. May 13, 2019) (citing Century 21 Real Estate LLC

v. Becerosa Corp., 666 F. Supp. 2d 274, 282 (E.D.N.Y. 2009)), R&R adopted as modified, 2019

WL 2385597 (E.D.N.Y. June 6, 2019). Plaintiff has devoted substantial time and resources to developing goodwill in its marks and to causing consumers to associate it with their high-quality goods. See Compl. ¶¶ 15-18. As to the second factor, the marks on the Counterfeit Goods and Unlawful Grey Market Goods are not only alleged to be similar to the JUUL Marks, but identical. See id. ¶ 28 & Exs. B, D. With regard to proximity of the products in the marketplace and the likelihood that Plaintiff will bridge the gap between products, Defendant's products use the JUUL Marks on the same type of ENDS products produced by Plaintiff itself, and Defendant sells non-genuine JUUL Products, which are the same types of products as the ones Plaintiff is lawfully able to sell within the United States. See id. ¶¶ 19-22, 25-26. The products therefore share the same marketplace. As to likelihood of confusion, while Defendant's default has prevented Plaintiff from receiving evidence in discovery, the fact that Defendant is holding out its own products as Plaintiff's products and selling Plaintiff's own products that are not licensed for sale in the United States, easily supports the inference that consumer confusion will result.

Defendant demonstrates bad faith by continuing to engage in infringing conduct after receiving a demand to stop engaging in such conduct. See id. ¶¶ 23-24, 26. The quality factor also weighs in Plaintiff's favor. Plaintiff puts substantial resources into maintaining high quality in its ENDS products, but because it has no control over the Defendant's Counterfeit Goods, there is no reason to believe those same resources would be invested into the quality of the copycat ones. See id. ¶¶ 18, 20, 27. As to the Unlawful Grey Market Goods, because those products are only licensed for sale within certain countries outside of the United States, they do not comply with the regulations of the FDA and do not match the quality of genuine JUUL Products. See id. ¶ 25. Regarding the sophistication of consumers, the ENDS products are both prevalent and sold to the general public. See id. ¶ 18. There is no evidence offered that an

average consumer would have the specialized knowledge or wherewithal to spot a counterfeit product.  Therefore, the final factor also weighs in Plaintiff's favor.

I find that Plaintiff has established liability as to the federal trademark-infringement claims with respect to both the Counterfeit Goods and the Unlawful Grey Market Goods pursuant to 15 U.S.C. § 1114 (Counts I and IV).  I also find that Plaintiff has established liability as to the federal false-designation-of-origin claim with respect to the Counterfeit Goods pursuant to 15 U.S.C. § 1125(a) (Count II).

Considering all the factors together, I respectfully recommend that the Court enter default judgment as to liability on Counts I, II and IV.

### ii.  Count III: Unfair Competition With Respect To Counterfeit Goods

Count III is labeled as a claim for "Unfair Competition" with respect to the Counterfeit Goods pursuant to 15 U.S.C. § 1125(a).  "[T]here is no specific Federal cause of action for unfair competition.  Instead unfair competition under the Lanham Act is a category of claims consisting primarily of causes of action for false designation of origin and false advertising."  Sussman-Automatic Corp. v. Spa World Corp., 15 F. Supp. 3d 258, 272-73 (E.D.N.Y. 2014) (quoting Pot Luck, LLC v. Freeman, No. 06 Civ. 10195 (DAB), 2009 WL 693611, at *4 (S.D.N.Y. Mar. 10, 2009)); accord Roberto Coin, Inc. v. Goldstein, No. 18 Civ. 4045 (EK) (ST), 2021 WL 4502470, at *15 n.13 (E.D.N.Y. Sept. 30, 2021) ("[A]n unfair competition claim [is] also known as a false designation of origin claim, [and] is brought pursuant" to the same statute.).  The allegations that constitute Count III are duplicative of the allegations that constitute Count II.  Compare Compl. ¶¶ 44-47, with id. ¶¶ 52-55.  As such, I find that a finding of liability on Count III is unnecessary.

I respectfully recommend that the Court deny Plaintiff's request for a default judgment as to liability on Count III because it is duplicative of Count II.

### iii. Counts V and VI: New York Common Law Trademark Infringement And Unfair Competition

By establishing the federal trademark-infringement claims, Plaintiff also necessarily establishes Defendant's liability on the parallel infringement claim under New York common law.  See Mitchell Grp. USA LLC, 2017 WL 9487193, at *4 (citing Pfizer, Inc. v. Y2K Shipping & Trading, Inc., No. 00 Civ. 5304 (SJ), 2004 WL 896952, at *7 (E.D.N.Y. Mar. 26, 2004)). Defendant's liability on the Lanham Act claims also suffices to establish its liability for an unfair-competition claim under New York common law if Plaintiff can demonstrate Defendant's bad faith.  See Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 34 (2d Cir. 1995). As discussed above with reference to the Polaroid factors, the Complaint adequately alleges, and the default therefore establishes, that Defendant willfully sold infringing goods bearing the JUUL Marks even after receiving notice of their infringement.  I therefore conclude that Defendant is liable on Plaintiff's trademark-infringement and unfair-competition claims under New York common law.

I respectfully recommend that the Court enter default judgment as to liability on Counts V and VI.

### iv. Count VII: Deceptive Acts And Practices Under Section 349 Of New York General Business Law

To prevail on its claim for deceptive acts and practices under Section 349 of New York General Business Law, Plaintiff must establish Defendant acted unlawfully, i.e., Defendant committed deceptive acts or practices in the conduct of its business.  N.Y. Gen. Bus. Law § 349. To state a claim under Section 349, a plaintiff must show (1) "that the challenged act or practice was consumer-oriented," (2) "that it was misleading in a material way," and (3) "that the plaintiff suffered injury as a result of the deceptive act."  Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 490 (2d Cir. 2014) (citation omitted).  "[T]he majority view in this Circuit is that

trademark . . . infringement claims are not cognizable under [N.Y. Gen. Bus. Law § 349] unless there is a specific and substantial injury to the public interest over and above ordinary trademark infringement[.]"  Philip Morris USA Inc. v. U.S. Sun Star Trading, Inc., No. 08 Civ. 68 (KAM) (JO), 2010 WL 2133937, at *6 (E.D.N.Y. Mar. 11, 2010) (quoting Nomination Di Antonio E Paolo Gensini S.N.C. v. H.E.R. Accessories Ltd., No. 07 Civ. 6965 (DAB), 2009 WL 4857605, at *8 (S.D.N.Y. Dec. 14, 2009)), R&R adopted, 2010 WL 2160058 (E.D.N.Y. May 27, 2010). "'[C]orporate competitors now have standing to bring a claim under this [statute] . . . so long as some harm to the public at large is at issue . . . .'"  Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995) (quoting Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 786 F. Supp. 182, 215 (E.D.N.Y. 1992), vacated in part on other grounds, 973 F.2d 1033 (2d Cir. 1992)).  "[I]njury or harm that satisfy this standard include 'potential danger to the public health or safety.'"  La Cibeles, Inc. v. Adipar, Ltd., No. 99 Civ. 4129 (AGS), 2000 WL 1253240, at *15 (S.D.N.Y. Sept. 1, 2000) (quoting Sports Traveler, Inc. v. Advance Magazine Publishers, Inc., No. 96 Civ. 5150 (JFK), 1997 WL 137443, at *2 (S.D.N.Y. Mar. 24, 1997)); see Johnson & Johnson v. Azam Int'l Trading, No. 07 Civ. 4302 (SLT) (SMG), 2013 WL 4048295, at *11 (E.D.N.Y. Aug. 9, 2013) (on a motion for default judgment, finding the elements of N.Y. Gen. Bus. Law § 349 to be met where "the counterfeit test strips sold by [the defendant] were the subject of at least three different nationwide alerts issued by the FDA that warned of danger associated with their use by diabetics" (adopting report & recommendation)).

I find the unopposed allegations in the Complaint establish liability under N.Y. Gen. Bus. Law § 349.  The Complaint asserts Defendant's wrongful use of the JUUL Marks was consumer-oriented and materially misleading.  See Compl. ¶¶ 20-21, 28-29.  Second, the Complaint asserts Plaintiff suffered injury as a result of Defendant's wrongful use of the JUUL Marks, including a

15

negative impact on Plaintiff's goodwill and business reputation.  See id. ¶¶ 30, 32.  Third, the Complaint asserts Defendant's wrongful use of the JUUL Marks creates a potentially substantial injury to the public as a whole.  See id. ¶¶ 20, 25, 76.  The Counterfeit Goods sold by Defendant are not manufactured in accordance with Plaintiff's own stringent quality controls but are instead manufactured outside of Plaintiff's knowledge and control, using unknown substances and materials, in unknown locations and with unknown manufacturing requirements and controls, and the Unlawful Grey Market Goods are not regulated by the FDA.  See id. ¶¶ 20, 25.  These counterfeit ENDS products therefore potentially pose a serious danger to the health of consumers.

I respectfully recommend that the Court enter default judgment as to liability on Count VII.

### d.  Statutory Damages And Statutory Interest

If the complaint suffices to establish liability, the court is left to conduct an inquiry to establish damages to a "reasonable certainty."  Credit Lyonnais Secs., 183 F.3d at 155 (citing Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)).  "[A]lthough the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing."  Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988), aff'd, 873 F.2d 38 (2d Cir. 1989).  The evidence a movant must provide in regards to damages is evidence that "the compensation sought relate[s] to the damages that naturally flow from the injuries pleaded."  Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 159 (2d Cir. 1992) (citation omitted).

To determine what statutory damages award is just, courts have looked to the following

factors, drawn from copyright law: "(1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant." Fitzgerald Publ'g. Co., Inc. v. Baylor Publ'g. Co., 807 F.2d 1110, 1116-17 (2d Cir. 1986).

Plaintiff seeks only statutory damages pursuant to the Lanham Act in its motion for default judgment and does not request damages under New York law.  The Lanham Act provides for an award of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just . . . ."  15 U.S.C. § 1117(c)(1).  Where willfulness is demonstrated, however, a maximum award of $2,000,000 per counterfeit mark per type of good sold may be awarded.  See id. § 1117(c)(2). Congress enacted the statutory damages remedy in trademark counterfeiting cases because evidence of a counterfeiter's profits is almost impossible to ascertain since "records are frequently nonexistent, inadequate, or deceptively kept." Gucci Am., Inc. v. Duty Free Apparel, Ltd., 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004), amended in part, 328 F. Supp. 2d 43 (S.D.N.Y. 2004); see N. Face Apparel Corp. v. Moler, No. 12 Civ. 6688 (JGK) (GWG), 2015 WL 4385626, at *5 (S.D.N.Y. July 15, 2015) ("Section 1117(c) was enacted to address the difficulty of calculating actual damages caused by counterfeiters." (citations omitted), R&R adopted, 2015 WL 5472939 (S.D.N.Y. Sept. 16, 2015)); Coach, Inc. v. Melendez, No. 10 Civ. 6178 (BSJ) (HBP), 2011 WL 4542971, at * 7 (S.D.N.Y. Sept. 2, 2011) (noting that the "lack of information regarding defendants' sales and profits make statutory damages particularly appropriate for these kinds of default cases" (internal quotation marks & citation omitted), R&R adopted, 2011 WL

4542717 (S.D.N.Y. Sept. 30, 2011)); Sara Lee Corp. v. Bags of N.Y., Inc., 36 F. Supp. 2d 161,

165 (S.D.N.Y. 1999) ("Statutory damages are most appropriate when infringer nondisclosure

during fact finding leaves damages uncertain.").

Here, Defendant's trademark infringement is deemed willful by virtue of Defendant's

default, thus allowing for a maximum award against Defendant of $2,000,000 per counterfeit

mark per type of good sold.  See Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y.

2003); Chloe v. Zarafshan, No. 06 Civ. 3140 (RJH) (MHD), 2009 WL 2956827, at *7 (S.D.N.Y.

Sept. 15, 2009) ("Willfulness may be established by a party's default because an innocent party

would presumably have made an effort to defend itself." (citations omitted)); Malletier v.

Carducci Leather Fashions, Inc., 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009) ("Here, by virtue of

its default, [defendant] has admitted [plaintiff]'s allegation that it acted knowingly and

intentionally or with reckless disregard or willful blindness to [plaintiff]'s rights." (citation

omitted)).

In addition to Defendant's default, the unopposed allegations in the Complaint establish

Defendant's willfulness by demonstrating Defendant's actual or constructive knowledge that its

conduct represented infringement or at least recklessly disregarded the possibility of

infringement.  For example, Defendant must have obtained the Counterfeit Goods and Unlawful

Grey Market Goods from unauthorized suppliers or importers because Plaintiff's authorized

United States distribution network does not deal in such goods.  See Bambu Sales, Inc. v. Ozak

Trading, Inc., 58 F.3d 849, 854 (2d Cir. 1995) (finding defendants to have acted willfully due in

part to their failure to take any measures to verify the authenticity of the infringing product),

abrogated on other grounds, 4 Pillar Dynasty LLC v. New York & Co., Inc., 933 F.3d 202 (2d

Cir. 2019)); Gucci Am., 315 F. Supp. 2d at 521 ("Selling products acquired outside the

customary chain of retail distribution and without the usual authenticating documentation is a high risk business." (alteration, internal quotation marks & citations omitted)). Further, the Counterfeit Goods and Unlawful Grey Market Goods were flavors of JUULpods® that were not available from authorized distributors at the time of resell due to governing regulations. See ECF No. 12 ¶¶ 3, 5; Compl. Exs. B, D. The packaging for an Unlawful Grey Market Good contains text in both English and the relevant foreign language, and it explicitly states that the product is for sale only in a particular foreign country. ECF No. 12 ¶ 5; Compl. Ex. D.

Statutory damages are designed not only to compensate injuries sustained but also to discourage wrongful conduct by the defendant and others. See Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 113-14 (2d Cir. 2001). Where a defendant has acted willfully, statutory damages should incorporate not only a compensatory, but also a punitive component, to discourage further wrongdoing by the defendant and others. See Malletier, 648 F. Supp. 2d at 504; Gucci Am., Inc. v. MyReplicaHandbag.com, No. 07 Civ. 2438 (JGK), 2008 WL 512789, at *3 (S.D.N.Y. Feb. 26, 2008) (quoting Rolex Watch U.S.A., Inc. v. Jones, No. 99 Civ. 2359 (DLC) (FM), 2002 WL 596354, at *5 (S.D.N.Y. Apr. 17, 2002)).

Plaintiff requests that the Court award statutory damages "in the amount of $750,000, which can be equated to $250,000 for each of the three JUUL Marks identified in the Complaint." ECF No. 21 at 17. Plaintiff requests this amount to compensate it for the harm done and also to punish Defendant and deter others from similar conduct. See id. The Court notes that Plaintiff does not provide any evidence of Defendant's counterfeiting operation or of its general sales operation, both of which should be within Plaintiff's control. Plaintiff does not explain how much the two infringing products purchased were worth, or whether the purchaser observed other similar counterfeit or non-genuine JUUL Products in the store for sale. Plaintiff

also does not submit any information or evidence regarding its own alleged lost profits due to Defendant's sales.  As such, the Court primarily relies on the awards in similar cases to determine what amount would be "just" here.

Although some courts have awarded the maximum statutory damages against willful trademark infringers, "[m]ost judges have issued awards far below the statutory maximum . . . where the defendant willfully infringes on the plaintiff's mark . . . but where there is no concrete information about the defendant's actual sales figures and profits and the estimate of plaintiff's lost revenue." All-Star Mktg. Grp., LLC, v. Media Brands Co., Ltd., 775 F. Supp. 2d 613, 624 (S.D.N.Y. 2011) (collecting cases awarding between $25,000 and $250,000 per mark).  "Other courts have considered statutory damages awards in cases similar to this one and awarded statutory damages in the range of $10,000 to $50,000 per mark or per infringer." Shenzhen Smoore Tech. Ltd. v. Anuonuo Int'l Trade Co., No. 19 Civ. 9896 (LGS) (RWL), 2020 WL 7390518, at *9 (S.D.N.Y. Oct. 23, 2020) (collecting cases); see Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp., 954 F. Supp. 2d 145, 155 (E.D.N.Y. 2013) (collecting cases) ("Courts regularly award statutory damages in the realm of up to $50,000 as amounts that both account for a defendant's willful disregard of trademark laws and as a deterrent to others who might consider engaging in infringing conduct in the future."); BBK Tobacco & Foods, LLP v. Galaxy VI Corp., No. 17 Civ. 4079 (BCM), 2020 WL 2833666, at *1, *8, *13 (S.D.N.Y. May 31, 2020) (rejecting plaintiff's request for statutory damages of $75,000 per mark and awarding a total of $30,000 in statutory damages, or $15,000 per mark, when a store "sold one pack of counterfeit [] rolling papers (for $2.00) and one counterfeit [] rolling tray (for $10.00) to an investigator hired by [plaintiff]").

Another Court in this District recently recommended awarding Plaintiff $50,000 in

statutory damages—$25,000 for each sale of that defendant's counterfeit or non-genuine JUUL

Products—reasoning that $50,000 should adequately compensate Plaintiff for any damages

incurred as well as serve as a deterrent.  See JUUL Labs, Inc. v. Gates Mini Market Corp., No.

21 Civ. 3240 (ENV) (RER), ECF No. 15 at 13-15 (E.D.N.Y. Feb. 9, 2022) (report &

recommendation).  Given the very limited information provided about the size or scope of

Defendant's counterfeiting and sales operation, the Court must similarly focus on the fact this

case is based on only two sales.  See id. at 12-15 (collecting cases); All-Star Mktg. Grp., 775 F.

Supp. 2d 613 at 625 (recommending statutory damages of $25,000-50,000 per defendant for

willful infringement given limited information in the record); Shenzhen, 2020 WL 7390518, at

*8-9 (finding statutory damages of $50,000 per defendant reasonable and noting lack of

information regarding defaulting defendants' operations); BBK Tobacco & Foods, 2020 WL

2833666, at *8-13 (awarding statutory damages of $30,000 based on, inter alia, only two

documented infringing sales).  The damages here are, thus, limited.  See Sky Vapors, LLC v.

Blazynski, No. 14 Civ. 1078-A, 2018 WL 6696995, at *4 (W.D.N.Y. Dec. 20, 2018) (reducing

the plaintiff's request of $50,000 in statutory damages to $40,000 in light of the defendant's

single storefront operation); Sream, Inc. v. Singh, No. 18 Civ. 987 (DAD) (BAM), 2018 WL

5819455, at *9 (E.D. Cal. Nov. 5, 2018) (reducing the plaintiff's request of $200,000 in statutory

damages to $20,000 where there was evidence of only one infringing sale in the record), R&R

adopted, 2019 WL 2160358 (E.D. Cal. Feb. 13, 2019).  This Court finds that a statutory damages

award of $50,000 is reasonable, and $750,000 in statutory damages would amount to a windfall.

See JUUL Labs, Inc., No. 21 Civ. 3240 (ENV) (RER), ECF No. 15 at 15.[3]  I respectfully

---

[3] Plaintiff points to another Court's statutory damages award of $750,000 in JUUL Labs, Inc. v.
5 Borough Market II Corp., No. 20 Civ. 3799 (WFK) (PK) (E.D.N.Y. June 25, 2021), to support

recommend that the Court award Plaintiff statutory damages of $50,000.

As Plaintiff is entitled to post-judgment interest at the statutory rate, this Court also

respectfully recommends awarding Plaintiff post-judgment interest.  See 28 U.S.C. § 1961(a);

Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 124 (S.D.N.Y. 2008) (awarding post-

judgment interest pursuant to 28 U.S.C. § 1961(a) in Lanham Act action).

### e.  Injunctive Relief

A plaintiff seeking a permanent injunction on a motion for a default judgment must show

that it is entitled to injunctive relief under the applicable statutes and that it meets the

prerequisites for issuance of an injunction.  See Brydge Techs. LLC v. Ogadget LLC, No. 19

Civ. 5692 (EK) (CLP), 2021 WL 1200316, at *5 (E.D.N.Y. Mar. 4, 2021) (citing Stark Carpet

Corp., 954 F. Supp. 2d at 157), R&R adopted, 2021 WL 1193003 (E.D.N.Y. Mar. 30, 2021).

The prerequisites are: "(1) that [the plaintiff] has suffered an irreparable injury; (2) that remedies

available at law, such as monetary damages, are inadequate to compensate for that injury; (3)

that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity

is warranted; and (4) that the public interest would not be disserved by a permanent injunction."

eBav Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

First, Plaintiff has suffered and continues to suffer irreparable injury.  Defendant's sales

of Counterfeit Goods and Unlawful Grey Market Goods damage Plaintiff's goodwill and

reputation, as well as its ability to control and protect the JUUL Marks.  This is sufficient to

demonstrate irreparable harm.  See Power Test Petroleum Distribs., Inc. v. Calcu Gas, Inc., 754

F.2d 91, 95 (2d Cir. 1985) ("[I]rreparable injury[] exists in a trademark case when the party

---

its argument for requesting $250,000 per registered mark; however, that judgment did not
discuss Plaintiff's claims for damages in detail.  See id., ECF Nos. 20-21.

seeking the injunction shows that it will lose control over the reputation of its trademark" because loss of control over one's "[r]eputation is not calculable nor precisely compensable." (citation omitted)).

Second, Plaintiff has no adequate remedy at law concerning Defendant's future actions to sell the Counterfeit Goods and Unlawful Grey Market Goods. Plaintiff filed this action to stop the repeated infringements by Defendant, who never participated in this litigation. Because the losses of reputation and goodwill, and the resulting loss of customers are not precisely quantifiable, remedies at law cannot adequately compensate Plaintiff for its injuries. See Nw. Nat'l Ins. Co. of Milwaukee, WI v. Alberts, 937 F.2d 77, 80 (2d Cir. 1991) ("The irreparable injury requisite for the preliminary injunction overlaps with the absent lack of adequate remedy at law necessary to establish the equitable rights."). Absent an injunction, there is nothing to prevent Defendant from continuing to sell counterfeit products. This weighs in favor of a permanent injunction.

Third, the balance of hardships favors the equitable remedy of a permanent injunction given that enjoining Defendant from infringing business practices does not put any undue burden on Defendant. Defendant can continue to sell lawful ENDS products, including genuine JUUL products.

The issuance of a permanent injunction is in the public's interest. In trademark infringement cases, the public interest "lies in avoiding confusion, particularly where [the] defendant would be able to continue its activities under another mark." Mitchell Grp. USA LLC, 2017 WL 9487193, at *8 (quoting N.Y. City Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010)). Defendant's sales of Counterfeit Goods inherently confuse consumers who believe the products are genuine goods originating from Plaintiff. Defendant's

sales of Unlawful Grey Market Goods inherently confuse consumers who believe the products are JUUL Products authorized and approved for sale to such consumers.  Plaintiff has no control over the quality and materials used in the Counterfeit Goods and the Unlawful Grey Market Goods are not in compliance with the FDA's regulations; therefore, it is in the public interest to remove these potentially dangerous products from the market.

I respectfully recommend that the Court grant Plaintiff's request for injunctive relief and issue the following order for a permanent injunction:

> This Court prohibits Defendant, and its respective agents, servants, employees, and representatives and all persons in active concert and participation with them, during the pendency of this action and permanently thereafter, from: engaging or continuing to engage in the infringing, unlawful, unfair, or fraudulent business acts or practices described herein, including the marketing, sale, distribution, and/or other dealing in any non-genuine JUUL Products, including fake counterfeit products or unauthorized grey-market products; using without permission any mark or other intellectual property right of Plaintiff; acting to infringe the JUUL Marks; falsely designating the origin of any product to be from Plaintiff; engaging in unfair competition with Plaintiff; or acting in any other manner to derogate Plaintiff's intellectual property rights.

See Compl. at 15; ECF No. 13 at 18-19.

## III. CONCLUSION

For the reasons stated above, this Court respectfully recommends that the District Court grant in part and deny in part Plaintiff's motion for a default judgment as follows:

1. grant Plaintiff's motion for default judgment on liability with respect to Count I, Count II, Count IV, Count V, Count VI and Count VII;

2. deny Plaintiff's motion for default judgment on liability with respect to Count III;

3. award Plaintiff $50,000 in statutory damages plus statutory post-judgment interest; and

4. issue a permanent injunction barring Defendant from selling counterfeit or non-genuine JUUL Products as noted above.

## IV.  OBJECTIONS

This report and recommendation will be filed electronically.  The Court will mail a copy of this report and recommendation to Defendant at: EZ Deli Grocery Corp I, Attn: Shao Lin Zheng, 735 Knickerbocker Avenue, Brooklyn, NY 11237.

Written objections to this report and recommendation must be filed with the Clerk of the Court within the time permitted after service of the report and recommendation, and in accordance with the Individual Rules of the District Judge.  Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this report and recommendation.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b); see also Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge]'s report operates as a waiver of any further judicial review of the magistrate [judge]'s decision.").

Dated:  Brooklyn, New York
          February 10, 2022

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge